UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MALIK HODGE,

    Plaintiff,

      v.

UNITED AIRLINES,

    Defendant.

Civil Action No. 07-1527 (CKK)

**MEMORANDUM OPINION**
(October 26, 2009)

This is an employment discrimination case alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the Family Medical Leave Act of 1990, 29 U.S.C. §§ 2611 *et seq.* ("FMLA"). Currently before the Court are the merits of Defendant's [4] Motion to Dismiss Plaintiff's Complaint. The Court previously granted Defendant's motion as conceded due to Plaintiff's failure to file a timely response and dismissed the case without prejudice. *See* [5] Order (Jan. 4, 2008). The Court denied Plaintiff's motion for reconsideration of that decision. *See* [8] Order (Jan. 18, 2008). Plaintiff appealed, and the Court of Appeals, on its own motion, remanded the case to allow this Court to determine whether it wished to reconsider its decision in light of statute of limitations problems that might prevent Plaintiff from refiling his Title VII claims. *See* [12] Order (Aug. 1, 2008). Accordingly, this Court vacated its prior order of dismissal, reinstated the case, and ordered that Plaintiff respond to Defendant's pending motion to dismiss. *See* [13] Order (Aug. 7, 2008). The Court now addresses the merits of Defendant's motion.

Defendant's motion raises three primary arguments. First, Defendant contends that

Plaintiff's Title VII claims are time-barred because he failed to exhaust administrative remedies by filing a timely charge with the Equal Employment Opportunity Commission.  Second, Defendant contends that Plaintiff's hostile work environment claim was never raised with the EEOC and thus cannot be a part of this suit.  Third, Defendant contends that Plaintiff's FMLA claim is time-barred because it was not filed within the two-year statute of limitations for ordinary violations.  In response, Plaintiff argues that he did timely file a charge with the EEOC, that his hostile work environment claim was included in that charge, and that his FMLA claim alleges a willful violation of the statute to which a three-year statute of limitations applies.

Defendant styled its motion as one to dismiss the complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  Alternatively, Defendant asks this Court to dismiss Plaintiff's Title VII claims for lack of subject matter jurisdiction under Rule 12(b)(1) because of Plaintiff's alleged failure to timely exhaust administrative remedies prior to filing suit.  *See* Def.'s Mem. P. &. A. Supp. Mot. Dismiss ("Def.'s Mem.") at 4.  However, although exhaustion is required by the statute at issue, *see* 42 U.S.C. § 2000e-5(f), the statute does not clearly indicate that exhaustion is a jurisdictional prerequisite as opposed to merely a required element of the claim.  Federal courts must "presume exhaustion is non-jurisdictional unless Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision." *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1248 (D.C. Cir. 2004) (internal quotation marks and citation omitted).  Accordingly, the Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel,

and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Thus, the Court cannot review Defendant's motion pursuant to Rule 12(b)(1).

This distinction is important because both parties have attached exhibits to their briefs so as to provide the Court with additional documents pertaining to Plaintiff's Title VII claims and filings with the EEOC. "Generally, when a court relies upon matters outside the pleadings, a motion to dismiss [under Rule 12(b)(6)] must be treated as one for summary judgment." *Solomon v. Office of the Architect of the Capitol*, 539 F. Supp. 2d 347, 349-50 (D.D.C. 2008); Fed. R. Civ. P. 12(d). Therefore, the Court must either disregard the parties' exhibits or convert Defendant's motion into one for summary judgment. Because the Court finds that the exhibits attached are integral to the parties' arguments regarding Plaintiff's exhaustion of administrative remedies, the Court shall treat Defendant's motion as one for summary judgment with respect to the Title VII claims.[1] With respect to the FMLA claim, the Court shall rule on Defendant's motion to dismiss pursuant to Rule 12(b)(6).

For the reasons expressed below, the Court finds that Plaintiff did timely exhaust his Title VII claims for discrimination and retaliation but did not exhaust any claims for hostile work environment. The Court also finds that Plaintiff has alleged a willful violation of the FMLA subject to the three-year statute of limitations. The Court shall therefore deny Defendant's motion to dismiss Plaintiff's Title VII claims as untimely, grant Defendant's motion as to any hostile work environment claims, and deny Defendant's motion to dismiss Plaintiff's FMLA

---

[1] Federal Rule of Civil Procedure 12(d) requires the Court to give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Because both parties voluntarily attached exhibits to their briefs on the issue of exhaustion and no discovery should be necessary to uncover relevant information, the Court finds that the parties have been afforded a reasonable opportunity to present all the relevant materials to the Court.

claim as time-barred.

## I. BACKGROUND

Plaintiff Malik Hodge worked as a flight attendant for Defendant United Airlines ("United") from February 26, 1995 until he was terminated on March 10, 2005. Compl. ¶ 5. Hodge claims that during the last three years of his employment, he was subjected to harassment based on his race (African American) and ethnic appearance. *Id.* ¶¶ 5-6. In his Complaint, Hodge describes several instances in which his supervisors and co-workers criticized his ethnic hairstyles and hair coverings. *Id.* ¶¶ 6-9. On October 20, 2004, Hodge was injured in an automobile accident in the District of Columbia. *Id.* ¶ 10. He began receiving physical therapy shortly thereafter and informed United of his need for continued medical care. *Id.* Hodge returned to work in December 2004, requiring him to decrease his physical therapy. *Id.* ¶ 11. On December 23, 2004, he suffered a recurrence of the injury to his back, leaving him in a debilitated state, and his doctors restricted him from work activities. *Id.*

While Hodge was out of work with the injury and awaiting treatment, one of his supervisors sent him an email indicating that she had made several unsuccessful attempts to reach him and that she needed him to provide medical documentation for his absence by no later than January 7, 2005. Compl. ¶ 12. However, the supervisor's phone calls were directed to Hodge's residence in Hong Kong, not Washington, D.C., where Hodge was staying, and Hodge did not receive her email immediately because he was unable to check his email on a regular basis. *Id.* ¶¶ 12-13. Hodge first became aware that his supervisor was trying to reach him on or about January 11, 2005, when his father notified him that he had received a package from United containing a letter of charge. *Id.* ¶ 13. Hodge faxed the requested medical documentation to

United on January 12 and 18, 2005.  *Id.*

In February 2005, Hodge filed an internal complaint of discrimination against United. Compl. ¶ 13.  United's management conducted a hearing, charged Hodge with unauthorized absence from work, invalid sick leave, and failure to comply with a written directive.  *Id.* ¶ 14. Hodge was terminated on March 10, 2005.  *Id.*  Hodge claims that he was treated differently than a similarly situated white employee, who was also absent from work without leave but was given an opportunity to resolve his situation before proceeding to hearing.  *Id.*

On November 23, 2005, Hodge submitted a "Charge Questionnaire" (Form 283) with the Equal Employment Opportunity Commission indicating that United had discriminated against him on the basis of race, color, disability and "other."  *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), Ex. A (Charge Questionnaire) at 2-3.[2]  The Charge Questionnaire cited Hodge's discharge on March 10, 2005, and in response to the question "Explain why you feel the action taken against you was discriminatory," Hodge wrote "someone (white male) in similar circumstances wasn't terminated."  *Id.* at 3.  When asked to state the disability for which he felt he was being discriminated, Hodge wrote "I had back problems that prevented me from working."  *Id.*  Hodge further explained in response to a question asking if any actions were retaliatory: "I wrote a letter of harrassment [sic] to headquarters in Chicago and a month later I

---

[2] The opposition brief filed by Plaintiff in this case references two exhibits—a "charge of discrimination filed with the EEOC" (Ex. A) and a "finding of probable cause" issued by the EEOC (Ex. B).  *See* Opp'n at 4.  The Court notes that Plaintiff did not attach these exhibits to his opposition in this case, but he did attach them to his nearly identical opposition brief in the related case, *Hodge v. United Airlines*, Civ. Action No. 08-232 (*Hodge II*), also before this Court. *See Hodge II*, Pl.'s Opp'n to Def.'s Mot. to Dismiss (Dkt. 11), Exs. A, B.  Because Plaintiff clearly intended to incorporate the same exhibits in his opposition in *Hodge I* as he did in *Hodge II*, the Court shall treat Plaintiff's opposition as if the referenced exhibits were in fact attached.

was fired!" *Id.*[3]

On January 12, 2006, the EEOC's Chicago District Office received a formal Charge of Discrimination (Form 5) from Hodge. *See* Def.'s Mot. to Dismiss, Ex. 1 (Charge of Discrimination). The charge indicated that Hodge had been discriminated based on race and retaliation and explained as follows:

> I was hired by Respondent in or around February 1995. On or about October 20, 2004 I was involved in a car accident which caused me to be placed on pain medication. I called in and placed myself on the company sick list on or about December 23, 2004. On or about January 3, 2005, I was falsely accused by Respondent. Subsequently, I complained of racial discrimination regarding the charges against me to Human Resources on or about February 3, 2005. On March 10, 2005 I was discharged. I believe I have been subjected to retaliation for complaining of discrimination against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id.* The charge was signed by Hodge on January 6, 2006. *Id.* On May 29, 2007, the EEOC issued a Notice of Right to Sue letter to Hodge. *See* Def.'s Mot. to Dismiss, Ex. 2 (Notice of Right to Sue).

Hodge filed this action (*Hodge I*) on August 27, 2007. Following this Court's first order dismissing his Complaint without prejudice, Hodge filed a second action (*Hodge II*) raising the same claims and adding claims for wrongful discharge, breach of contract, and violation of 42 U.S.C. § 1981. *See* Complaint, *Hodge v. United Airlines*, Civ. Action No. 08-232 (filed Feb. 12,

---

[3] Plaintiff's Exhibit A appears to be a faxed copy of his Charge Questionnaire, along with three pages of handwritten notes dated December 7, 2005. Two of these pages appear to be a detailed chronology of the events giving rise to Plaintiff's discharge from United. *See* Pl.'s Opp'n to Mot. to Dismiss, Ex. A at 5-6. Although more detailed, the substance of this chronology is essentially identical to the facts alleged in the Complaint. It is not clear whether these handwritten pages were ever submitted to the EEOC, although their later date makes it highly improbable that they were submitted along with the Charge Questionnaire on November 23, 2005. Ultimately, however, the Court need not make a factual determination with regard to these handwritten pages.

2008).  On August 25, 2008, this Court stayed *Hodge II* so that it could first address the issues raised in *Hodge I*.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted when it appears that, under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts in support of his claim that would entitle him to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  A defendant may raise the affirmative defense of statute of limitations in a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint.  *See Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998).  The court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred.  *Id.*; *Doe v. Dep't of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985).

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  As with a motion to dismiss, a court ruling on a motion for summary judgment must draw all justifiable inferences in favor of the nonmoving party and accept the nonmoving party's evidence as true.  *Id.* at 255.

### III. DISCUSSION

**A.     The Timeliness of Hodge's Charge Filed with the EEOC**

United argues that Hodge's Title VII claims should be dismissed because he did not file a formal charge with the EEOC within 300 days of his allegedly wrongful discharge.[4]  A plaintiff challenging an employment practice under Title VII must first file a charge with the EEOC, and the charge "must be filed within a specified period (either 180 or 300 days, depending on the State) after the alleged unlawful employment practice occurred."  *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 623-24 (2007) (citing 42 U.S.C. § 2000e-5(e)(1)), *superseded by statute*, Lily Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009).  "[I]f the employee does not submit a timely EEOC charge, the employee may not challenge that practice in court."  *Id.* (citing 42 U.S.C. § 2000e-5(f)(1)).  Here, there is no dispute that the challenged employment practice occurred on March 10, 2005, the date that Hodge was discharged by United.  Moreover, the parties appear to agree that Hodge had 300 days in which to file his charge with the EEOC.[5]  The dispute revolves around whether Hodge's filing of a "Charge

---

[4] United also claims that Hodge's Title VII claims should be dismissed because Hodge failed to *allege* that he exhausted his administrative remedies.  Def.'s Mem. at 5.  However, exhaustion of administrative remedies is an affirmative defense for which the Defendant, not the Plaintiff, bears the burdens of pleading and proof.  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 68 (D.D.C. 2007).  Accordingly, Hodge's failure to allege in his Complaint that he exhausted administrative remedies is not a ground for dismissing his claims.

[5] United initially suggests in its opening brief that a 180-day limitations period is applicable, *see* Def.'s Mem. at 6, but backs off this argument in its reply brief, claiming only that Hodge failed to timely file within 300 days of his termination.  *See* Def.'s Reply Mem. Supp. Def.'s Mot. Dismiss ("Def.'s Reply").  The 300-day window applies when the aggrieved person first filed a complaint with a state or local agency with the authority to grant relief.  *See* 42 U.S.C. § 2000e-5(e)(1).  Although Hodge did not file with a state or local agency first, employees are entitled to a 300-day window when a "worksharing agreement" exists between the EEOC and

Questionnaire" with the EEOC on November 23, 2005 constitutes a valid charge, or whether Hodge cannot be considered to have filed until the EEOC received his formal "Charge of Discrimination" form on January 12, 2006, which was more than 300 days after his termination.

The Supreme Court was faced with a nearly identical question in *Federal Express Corp. v. Holowecki*, 128 S. Ct. 1147 (2008). In *Holowecki*, the plaintiff had filed an "Intake Questionnaire" with the EEOC along with a signed affidavit describing the alleged discriminatory employment practices in greater detail. *See* 128 S. Ct. at 1154. The Supreme Court upheld the EEOC's conclusion that these documents could constitute a "charge" for purposes of the filing requirements in the Age Discrimination in Employment Act (ADEA). *Id.* at 1155-58. In doing so, the Court held that "[i]n addition to the information required by the regulations, *i.e.*, an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 1157-58. "[T]he filing must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes." *Id.* at 1158. Although the Court noted that the Intake Questionnaire itself was merely aimed at facilitating "pre-charge filing counseling," the fact that the plaintiff had attached a detailed affidavit asking the EEOC to take action against her employer indicated that her filing could be considered a charge within the

---

a local fair employment practices office. *Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 91 (D.D.C. 2007) (citing 29 C.F.R. § 1601.13(a)(4)(ii)(A)). Illinois, the state where Hodge filed his charge with the EEOC, has such an agreement, so the 300-day window is appropriate. *See Russell v. Declo Remy Div. of Gen. Motors*, 51 F.3d 746, 751 (7th Cir. 1995).

meaning of the statute. *Id.* at 1159-60.

The Court in *Holowecki* cautioned that because the EEOC's enforcement mechanisms for ADEA claims differ slightly from those pertaining to Title VII, courts should be careful "not to apply rules applicable under one statute to a different statute without careful and critical examination." 128 S. Ct. at 1153. However, one court within this District has already held that *Holowecki* applies to a Charge Questionnaire filed by a Title VII plaintiff. *See Beckham v. Nat'l R.R. Passenger Corp.*, 590 F. Supp. 2d 82 (D.D.C. 2008). As in this case, the plaintiff in *Beckham* did not file her formal "Charge of Discrimination" (EEOC Form 5) until after the 300-day window, but she timely filed a "Charge Questionnaire" (EEOC Form 283). *See* 590 F. Supp. 2d at 85. Judge Rosemary M. Collyer determined that the Intake Questionnaire discussed in *Holowecki* was the predecessor to the Charge Questionnaire filed by Beckham, and there were several significant differences between the forms. *Id.* at 86. For example, the Charge Questionnaire explicitly states that "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will . . . consider it to be a sufficient charge of discrimination under the relevant statute(s)." *Id.*; Pl.'s Opp'n, Ex. A (Charge Questionnaire) at 3 n.3. The Charge Questionnaire states that its purpose "is to solicit information in an acceptable form consistent with statutory requirements to enable the Commission to act on matters within its jurisdiction." 590 F. Supp. 2d at 87; Pl.'s Opp'n, Ex. A at 3 n.3. Given the *Holowecki* Court's guidance that a charge must be a request that the Commission take remedial action, Judge Collyer deemed these differences in the forms to be legally significant. 590 F. Supp. 2d at 87.

This Court agrees with Judge Collyer's analysis. Hodge's filing of the Charge

Questionnaire contained all the legally required elements of a charge: it named his employer (United) and his direct supervisor, listed the approximate number of employees for United, and provided a concise statement of the facts, including dates, of the alleged discriminatory practices. *See* 29 C.F.R. § 1601.12(a) (describing the required contents of a charge). Moreover, EEOC's regulations state that "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). Hodge's Charge Questionnaire satisfies this standard. Because that Charge Questionnaire was filed within 300 days of his termination, the Court shall deny United's motion to dismiss Hodge's Title VII claims as untimely.

**B.      Hodge's Hostile Work Environment Claim**

United next argues that Hodge's hostile work environment claim should be dismissed because it was never raised with the EEOC, and thus he did not exhaust his administrative remedies with respect to that claim. The Court begins by noting that Hodge's complaint does not identify discrete claims under Title VII, although it appears that he intended to enumerate three separate counts of violations because the next heading following his Title VII claims is titled "Count IV." *See* Compl. at 5, 7. United reads Hodge's Complaint as alleging three separate Title VII claims: discriminatory discharge, retaliatory discharge, and hostile work environment. *See* Def.'s Mem. at 3 n.1. Hodge does not appear to challenge this reading of his complaint, although his only response to United's argument on this ground is "Mr. Hodge is not pursuing a separate hostile work environment claim." Pl.'s Opp'n at 6.

Paragraph 17 of the Complaint alleges that

> Defendant, and through its agents knowingly and intentionally engaged in unlawful discrimination and retaliation, based on Hodge's race by subjecting Hodge to disparate treatment and a hostile work environment, including but not limited to subjecting Mr. Hodge to a harassment and a hostile work environment based on his race as detailed above, issuing Mr. Hodge unwarranted discipline, and terminating his employment after he filed a complaint of discrimination. . . .

The Court agrees with United that Hodge's Complaint appears to state three separate claims under Title VII. It is not clear from Hodge's statement in his opposition whether he is not pursuing *any* hostile work environment claim or whether he is not simply not pursuing one that involves events separate from those alleged in his Complaint. The Court shall presume in favor of Hodge that he intends to preserve some form of hostile work environment claim.

The question, then, is whether Hodge has properly exhausted any such claim by including it in his charge filed with the EEOC. The lawsuit following a charge is "limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (citation and internal quotation marks omitted). "At a minimum, the Title VII claims must arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.* In this case, the information described in both the Charge Questionnaire and the formal Charge of Discrimination relates only to Hodge's sick leave, retaliation, and termination. The only possible reference to a hostile work environment could be Hodge's indication that he "wrote a letter of harrassment" [sic] to headquarters, but this information is not specific or elaborate enough to allow the EEOC to infer the existence of a hostile work environment. Indeed, the crux of Hodge's discrimination charge with the EEOC seems to be that a white male in similar circumstances was not terminated. The EEOC's administrative

investigation could not be reasonably expected to uncover the allegations of hostile work environment contained in Hodge's complaint. Therefore, the Court finds that Hodge has exhausted only those Title VII claims directly relating to his termination on March 10, 2005.[6] Accordingly, the Court shall dismiss Hodge's hostile work environment claim, to the extent he has pled one.

**C.     Hodge's FMLA Claim**

United contends that Hodge's FMLA claim is time-barred because it was filed more than two years after the alleged violation. Def.'s Mem. at 10-11. The FMLA provides that actions must be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought," 29 U.S.C. § 2617(c)(1), except that "in the case of such action brought for a willful violation of [29 U.S.C. §] 2615 . . ., such action may be brought within 3 years . . . ." *Id.* § 2617(c)(2). Hodge contends that he is alleging a willful violation and that it is timely because it was filed within three years of United's failure to provide him with medical leave. *See* Pl.'s Opp'n at 6.

The three-year statute of limitations for willful violations does not apply unless the complaint contains some express or implied allegation of willful conduct. *Sampson v. Citibank, F.S.B.*, 53 F. Supp. 2d 13, 19 (D.D.C. 1999). In the context of the FMLA, willful conduct is generally viewed as "an employer that knows its conduct to be wrong or has shown reckless disregard for the matter in light of the statute." *Id.*; *see McLaughlin v. Richland Shoe Co.*, 486

---

[6] Moreover, unless Hodge's hostile work environment claim is connected to his allegedly discriminatory or retaliatory termination, his claim may be time-barred. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002) (holding that employees cannot recover for acts creating a hostile work environment outside the limitations period unless they are related to acts within the limitations period).

U.S. 128, (1988) (adopting "knowing or reckless disregard" standard in the analogous Fair Labor Standards Act context); *Bass v. Potter*, 522 F.3d 1098, 1103-04 (10th Cir. 2008) (following decisions of the First, Second, Sixth, and Eighth Circuits in applying the *McLaughlin* standard to the FMLA). In paragraph 24 of the Complaint, Hodge alleges, "[i]n violation of the Family and Medical Leave Act, Defendant knowingly and intentionally rejected or refused to accept a request for leave for medical attention, and ultimately terminated Mr. Hodge's employment." Compl. ¶ 24.

While Hodge does not use the magic word "willful" in his complaint, his allegations of knowledge and intentionality are sufficient to indicate that he believes United's violation of the statute was willful. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.") At this early stage in the litigation, those allegations are sufficient. *See Ricco v. Potter*, 377 F.3d 599, 603 (6th Cir. 2004) ("Because a plaintiff's factual allegations must be taken as true for purposes of a Rule 12(b)(6) motion, a plaintiff may survive merely by having alleged that the FMLA violation was willful.") Accordingly, the Court finds that Hodge's FMLA is not time-barred to the extent it claims a willful violation of the statute.

## IV. CONCLUSION

For the foregoing reasons, the Court shall DENY Defendant's motion with respect to the timeliness of Plaintiff's exhaustion of his Title VII claims, GRANT Defendant's motion with respect to Plaintiff's hostile work environment claim, and DENY Defendant's motion to dismiss Plaintiff's FMLA claim. In light of this ruling, the Court shall order the parties to file a joint

status report as to how they propose to proceed with this litigation and *Hodge II*.


Date: October 26, 2009

                                                */s/*
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge